J-S38019-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| KENNETH G. KRASINSKY AND RONALD G. KRASINSKY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| IRENE CHURA | |
| Appellee | No. 2207 MDA 2014 |

Appeal from the Judgment Entered November 25, 2014
In the Court of Common Pleas of Schuylkill County
Civil Division at No: S-2574-2011

BEFORE:  WECHT, STABILE, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED SEPTEMBER 09, 2015**

Appellants, Kenneth G. Krasinsky and Ronald G. Krasinsky, appeal from the November 25, 2014 judgment entered in favor of Appellee Irene Chura.  We affirm.

On September 2, 1999 Appellants purchased real property from Appellee and her late husband, William J. Chura.  According to the special warranty deed ("the 1999 Deed") that is the subject of this litigation, Appellants received 111.37 acres of real property ("the Property") located in North Union Township, Schuylkill County, Pennsylvania.  The purchase price was $120,000.00.  Shortly after this transaction Appellants' neighbors, Angelo J. Tolotti, Jr. and Nancy M. Tolotti, posted "no trespassing" signs on a portion of the Property.  On October 2, 2010, Appellants filed an ejectment

action against the Tolottis (the "Tolotti Action"). The Tolotti Action proceeded to a bench trial at which Appellants and the Tolottis presented competing claims to ownership of a 42.47-acre portion of the Property. On January 26, 2011, the trial court entered judgment in favor of the Tolottis. Thus, Appellants acquired only 68.9 acres of property under the 1999 Deed.

Appellants filed this action against Appellee on December 6, 2011 asserting causes of action for breach of contract, misrepresentation, and fraud. Appellants sought to recoup the value of the additional 42.47 acres they believed they purchased from Appellee and her late husband in 1999 as well as attorneys' fees. Appellee filed an answer and new matter on January 31, 2012. Appellants filed a reply to the new matter on February 21, 2012. In a subsequent stipulation of counsel, dated March 12, 2012, the parties stipulated that Appellee's answer and new matter would include the affirmative defense of statute of limitations.[1]

Appellants filed a motion for summary judgment on June 10, 2013. Appellee answered the motion on July 3, 2013, and the trial court denied Appellants' motion on August 5, 2013. Appellee filed a motion for summary judgment on December 2, 2013, asserting, in part, that the statute of

---

[1] In light of our analysis in the main text, we need not address Appellee's argument under the statutes of limitations applicable to contract and tort actions. The deed at issue in this case is a written instrument filed under seal and therefore subject to the twenty-year limitations period set forth in 42 Pa.C.S.A. § 5529(b); **see Meadow Run/Mountain Lake Park Ass'n v. Bantell**, 985 A.2d 989, 992 (Pa. Cmwlth. 2009).

limitations barred Appellants' causes of action. Appellants answered the motion on December 27, 2013, and the trial court denied the motion on March 17, 2014. The parties proceeded to a bench trial on October 1, 2014, and on October 28, 2014, the trial court returned a verdict and entered judgment in favor of Appellee. Appellants filed a post-trial motion on November 7, 2014 requesting the trial court to enter a judgment in their favor or order a new trial.[2] Appellee answered the post-trial motion on November 20, 2014. The trial court denied the post-trial motion on November 25, 2014. This timely appeal followed.

The heart of this dispute, according to Appellants, is Appellee's failure to deliver the 111.37 acres described in the 1999 deed. The Chura family, acquired the Property pursuant to a deed recorded in 1968 ("the 1968 Deed"). The 1968 Deed described the property as containing 80.37 acres.[3] The grantor on the 1968 Deed, Garth W. Felter, filed an affidavit ("the Felter

_____

[2] Rule 227.1 of the Rules of Civil Procedure permits litigants to file post-trial motions within ten days of the entry of verdict, as Appellants did here. Pa.R.C.P. 227.1(c)(1). The trial court's October 28, 2014 order, simultaneously entering a verdict and judgment, is procedurally unusual. Since Appellants filed a timely post-trial motion, we will treat the October 28, 2014 order as the verdict and the November 25, 2014 order as the appealable final order, as it rendered the trial court's premature entry of judgment final and ripe for appeal.

[3] For reasons not relevant to this appeal, the trial court in the Tolotti Action found that the 80.37 acres specified in the 1968 deed was inaccurate. As noted in the main text, the result in the Tolotti Action left Appellants with only 68.9 acres, not the 80.37 acres specified in the 1968 deed and several subsequent deeds.

affidavit") in this action indicating that the Chura family requested a corrective deed reflecting a boundary line that would increase the size of the Property from 80.37 to 111.37 acres. Felter refused to execute a corrective deed, believing the boundary described in the 1968 Deed was correct. In response to Appellants' requests for admission, Appellee admitted the facts averred in the Felter affidavit.

William J. Chura initially acquired a partial interest in the Property by the execution of a deed in 1976 ("the 1976 Deed"). According to the 1976 Deed, the Property consisted of 80.37 acres. In 1989 Appellee, Willam J. Chura, and two other members of the Chura family executed a corrective deed ("the Corrective Deed"), based upon a survey prepared by Stanley J. Gorski,[4] (the Gorski Survey). According to the Gorski Survey, the Property consisted of 111.37 acres, more or less. Appellee's late husband provided the Gorski survey to Appellants during the negotiation of the 1999 real estate transaction. The 1999 Deed references all of the above-described deeds and several others.

Based on these facts, Appellants alleged Appellee breached a contract to sell 111.37 acres of real estate for $120,000.00. Appellants also alleged

---

[4] On February 9, 2012, Appellee filed a complaint joining Gorski as an additional defendant. On September 19, 2012, Gorski filed a motion for summary judgment and neither party responded. The trial court granted the motion on December 12, 2012. Appellee did not pursue the matter any further.

that Appellee and William J. Chura committed fraud by purportedly selling property they knew they did not own. Finally, Appellants alleged a cause of action for misrepresentation based upon representations from Appellee and William J. Chura that the Property consisted of 111.37 acres.

We review an order denying a motion for judgment notwithstanding the verdict and/or new trial as follows:

> A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. . . . Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. . . . A JNOV should be entered only in a clear case.

> Our review of the trial court's denial of a new trial is limited to determining whether the trial court acted capriciously, abused its discretion, or committed an error of law that controlled the outcome of the case. In making this determination, we must consider whether, viewing the evidence in the light most favorable to the verdict winner, a new trial would produce a different verdict. Consequently, if there is any support in the record for the trial court's decision to deny a new trial, that decision must be affirmed.

*J.W.S. Delavau, Inc. v. E. Am. Transp. & Warehousing, Inc.*, 810 A.2d 672, 679-80 (Pa. Super. 2002), *appeal denied*, 827 A.2d 430 (Pa. 2003).

The trial court held that Appellants' breach of contract, fraud and misrepresentation causes of action merge into the deed. The trial court cited *Juniata Valley Bank v. Martin Oil Co.*, 736 A.2d 650 (Pa. Super.

1999), in which this Court explained: "The doctrine of merger 'holds that all warranties and representations in connection with a sale or other transaction made prior to or contemporaneous with a deed are merged into the deed and that unless therein expressly provided for, they are forever lost.'" ***Id.*** at 661 n.8 (quoting ***Elderkin v. Gaster***, 288 A.2d 771, 774 n.11 (Pa. 1972)). The trial court found, based on the law of fact pleading in Pennsylvania, that Appellants' complaint sufficiently set forth a cause of action for breach of the special warranty in the 1999 deed. Trial Court Opinion, 3/17/14, at 4-5 (citing Pa.R.C.P. 1019(a)); ***Grossman v. Barke***, 868 A.2d 561, 568-69 (Pa. Super. 2005), *appeal denied*, 889 A.2d 89 (Pa. 2005)). Appellants do not develop any argument to dispute the trial court's application of this merger doctrine.

The covenant of warranty is one of six covenants of title that traditionally accompany a transfer of real estate.[5] ***Juniata Valley Bank***,

---

[5] The ***Juniata Valley Bank*** Court described the six covenants as follows:

> The covenant of seisin is the grantor's promise that he owns the property interest he purports to convey to the grantee. The covenant of the right to convey is the grantor's promise that he has the power and authority to transfer the interest to the grantee. The covenant against encumbrances protects against the existence of physical or title encumbrances other than those acknowledged in the deed. Physical encumbrances include encroachments or easements. Title encumbrances include mortgages, leases, liens and unpaid property taxes. By the covenant of warranty, the grantor promises to compensate the grantee for any monetary losses occasioned by the grantor's

*(Footnote Continued Next Page)*

736 A.2d at 661 n.7. The covenant of warranty has three variations, a general warranty, a special warranty and a quitclaim deed. *Id.* The 1999 Deed is special warranty deed. As such, it requires the grantor to "warrant and defend the [transferred] property, and every part thereof, unto the said grantee [...] against the lawful claims of the **grantor or grantors, and all persons claiming by, through or under him or them.**" 21 P.S. § 6 (emphasis added).[6] In other words, the grantor of a special warranty deed "agrees to defend the title to the property against any adverse claimant with a superior interest in the land claiming through the grantor." *Leh*, 331 A.2d at 762. This occurs, for example, if the grantee can show the grantor

*(Footnote Continued)* ———————

> failure to convey the title promised in the deed. There are three variations to the covenant of warranty, and property may be conveyed through a special warranty, general warranty or quitclaim deed. The covenant of quiet enjoyment is the grantor's promise that the grantee's possession will not be disturbed by any other claimant with a superior lawful title. Finally, the covenant of further assurances requires the seller to take affirmative steps to cure any defects in the grantor's title.

*Juniata Valley Bank*, 736 A.2d at 661 n.7 (emphasis added). We confine our analysis to the covenant of warranty, as Appellants have not raised any issues under the other five covenants of title.

[6] A general warranty, in contrast, requires the grantor to defend the grantee against the "lawful claims and demands of all persons whomsoever." 21 P.S. § 5. In a quitclaim deed, the grantor simply releases any right or interest he has in the subject property. 21 P.S. § 7; *Greek Catholic Congregation of Borough of Olyphant v. Plummer*, 12 A.2d 435, 437 (Pa. 1940) ("Quit-claim deeds, long known to the law, are used when a party wishes to sell or otherwise convey an interest he may think he has in land but does not wish to warrant his title.").

"caused or allowed a lien or encumbrance to burden the land at the time of transfer." *Id.*

Thus, Appellee offered, and Appellants accepted, a deed whereby Appellee and William J. Chura, as grantors, promised to defend Appellees only against the lawful claims of persons claiming through Appellee and William J. Chura. The 1999 Deed expressly referenced prior deeds in the Chura's chain of title, including the 1989 Corrective Deed, the 1976 Deed and the 1968 Deed.

The Tolotti Action involved competing claims of title to a portion of the Property. As set forth above, Appellee relied on the Gorski Survey in executing the 1989 Corrective Deed, through which Appellee, her late husband and several other members of the Chura family claimed title to 111.37 acres rather than the 80.37 acres identified in prior deeds in the Chura family's chain of title. The Tolottis relied on their own chain of title. The Tolottis ultimately proved the Gorski Survey was inaccurate. The Tolottis therefore did not assert a superior claim of title "by and through" Appellee. Rather, the Tolottis claim to the disputed portion of the Property was independent of, and in direct contradiction to, Appellee's claim under the Corrective Deed. Under these circumstances, the covenant of special warranty was inapplicable because the Tolottis did not assert a claim by and through Appellee and her late husband as grantors.

Given the foregoing analysis, the trial court did not err in refusing to enter judgment in Appellants' favor, nor did the court err in refusing to grant a new trial. Appellants' arguments to the contrary simply do not recognize the effect of the covenant of special warranty set forth in the 1999 Deed.

Judgment affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/9/2015